IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERMAINE T. L., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-00497-SH |
| LELAND DUDEK,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jermaine T. L. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[1] Effective February 19, 2025, pursuant to Fed. R. Civ. P. 25(d), Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II disability benefits on March 21, 2022.  (R. 197–98.)  In his application, Plaintiff alleged he has been unable to work since March 5, 2021, due to conditions including posttraumatic stress disorder ("PTSD"), anxiety, and depression.  (R. 197, 221.)  Plaintiff was 43 years old at the time of the Administrative Law Judge's ("ALJ") decision.  (R. 28, 197.)  Plaintiff has a college education and past relevant work as a police officer and scientific helper.  (R. 222, 60.)

Plaintiff's claim was denied initially and upon reconsideration.  (R. 87–95, 98–106.)  Plaintiff then requested and received a hearing before an ALJ.  (R. 107–08, 33–64.)  The ALJ denied benefits and found Plaintiff not disabled.  (R. 17–28.)  The Appeals Council denied review on September 19, 2023 (R. 1–5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.  Plaintiff now appeals.

## III.  The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2026.  (R. 19.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.*)  At step two, the ALJ found Plaintiff to have the following severe impairments: (1) major

depressive disorder; (2) generalized anxiety disorder; and (3) PTSD. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 20–21.)

The ALJ then determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following mental limitations:

> [Claimant] is able to understand, remember, and perform simple and some complex tasks, sustain attention and concentration for up to 2 hours at a time with routine breaks when performing simple and some complex tasks, and sustain the mental demands associated with performing simple and some complex tasks throughout an ordinary workday and workweek. He is able to interact with supervisors as needed to receive work instructions but would work best in a job where he has limited contact with supervisors and co-workers meaning that the individual can frequently work alone. The job should not involve interacting with the public.

(R. 21.) The ALJ provided a recitation of the evidence that went into this finding. (R. 21–26.) At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 26–27.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as laundry worker, linen-room attendant, and industrial sweeper cleaner. (R. 27–28.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 28.)

## IV.  Issues

On appeal, Plaintiff raises three points of error: (1) the ALJ failed at steps four and five by not discussing Plaintiff's ability to adapt to changes in a work setting (ECF No. 9 at 6–7, 11); (2) the ALJ lacked evidentiary support for the RFC and erred by ignoring evidence from the Department of Veterans Affairs (the "VA") (*id.* at 7–10); and (3) the ALJ failed to base the RFC on properly assessed opinion evidence (*id.* at 10, 12). The

Court finds the ALJ legally erred in refusing to consider the supporting evidence underlying the VA's disability decision and does not address Plaintiff's other arguments.

## V.   Analysis

### A.   Evidence from the VA.

According to the record, the VA determined Plaintiff to be 100% disabled as of March 6, 2021. (R. 291.) Evidencing this decision, Plaintiff provided a letter summarizing the benefits he currently receives (R. 291–92), which had attached a *Review Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire* filled out by Dr. Gregory Brown (R. 293–98).

Dr. Brown conducted a "review examination" of Plaintiff on April 19, 2021, and completed the VA questionnaire. (R. 293–98.) In the questionnaire, Dr. Brown noted Plaintiff's PTSD diagnosis and provided his opinion regarding Plaintiff's level of occupational and social impairment. (R. 293–94.) In a section on "clinical findings," Dr. Brown noted the records he reviewed—VA disability claims documents and civilian and VA medical files[2]—and outlined Plaintiff's recent history, including his subjective symptom reports. (R. 295.)

Dr. Brown then listed the diagnostic criteria used to establish Plaintiff's PTSD, relying on a DSM-IV[3] checklist and finding that Plaintiff met each diagnostic criterion.

---

[2] The medical files and other documents reviewed by Dr. Brown do not appear to be in the administrative record for this case. Instead, Plaintiff's medical records start on April 30, 2021 (e.g., R. 382), after Dr. Brown completed the questionnaire.

[3] The *Diagnostic and Statistical Manual of Mental Disorders* is a medical "reference book on mental health and brain-related conditions and disorders," which assists in accurately diagnosing conditions by providing "clear, highly detailed definitions of mental health and brain-related conditions" and "examples of the signs and symptoms" of the same. https://my.clevelandclinic.org/health/articles/24291-diagnostic-and-statistical-manual-dsm-5 (last visited February 25, 2025).

(R. 296.) Among these notations, Dr. Brown found that Plaintiff experienced irritability or outbursts of anger, difficulty concentrating, and hypervigilance. (*Id.*) Similarly, Dr. Brown indicated that the following symptoms, among others, applied to Plaintiff's diagnosis: panic attacks; near-continuous panic or depression affecting the ability to function independently; impairment of short- and long-term memory, such as the retention of only highly learned material while forgetting to complete tasks; difficulty understanding complex commands; impaired judgment and abstract thinking; gross impairment in thought processes or communication; disturbances of motivation and mood; difficulty establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work-like setting; inability to establish and maintain effective relationships; impaired impulse control, such as unprovoked irritability with periods of violence; persistent delusions or hallucinations; grossly inappropriate behavior; and intermittent inability to perform activities of daily living. (R. 297.) Dr. Brown then found Plaintiff capable of managing his financial affairs and not an immediate threat or danger to himself or others. (R. 298.)

While Plaintiff does not contend the ALJ was under an obligation to consider or weigh the VA's ultimate disability decision, he argues the ALJ "totally ignored" the findings underlying this determination. (ECF No. 9 at 8.) The Court agrees.

### B. The ALJ's Obligation to Consider Certain VA Evidence.

Governmental agencies like the VA make disability benefit decisions, but those decisions are not binding on the Social Security Administration. 20 C.F.R. § 404.1504. For claims like Plaintiff's, the ALJ "will not provide any analysis in [the] determination . . . about a decision made by any other governmental agency . . . about whether [a claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* Decisions by other

governmental agencies are deemed "inherently neither valuable nor persuasive." *Id.* § 404.1520b(c)(1). The VA's determination that Plaintiff is 100% disabled (R. 291) easily falls into this exclusion.

However, the ALJ <u>does</u> "consider all of the supporting evidence underlying the other governmental agency['s] . . . decision" that is received in evidence by the Administration and that constitutes objective medical evidence, medical opinions, other medical evidence, or evidence from nonmedical sources. *Id.* § 404.1504 (citing 20 C.F.R. § 404.1513(a)(1)–(4)). Dr. Brown's responses on the questionnaire, attached to the VA's finding of disability, has all the indicia of "supporting evidence underlying" the VA's decision.

To be sure, the ALJ would not consider Dr. Brown's finding that Plaintiff has a "total occupational and social impairment" (R. 294), which would fall into the realm of statements on "issues reserved to the Commissioner," 20 C.F.R. § 404.1520b(c)(3). But what about the rest of Dr. Brown's observations and findings, including his clinical findings, the list of criteria he found supporting Plaintiff's PTSD diagnosis, and the symptoms he determined applied to the PTSD diagnosis? (R. 295–98.) At a minimum, much of this evidence falls into the category of "other medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

Numerous other courts have found such an exam and questionnaire to be supporting evidence of a VA's decision. *See, e.g.*, *Flowers v. Kijakazi*, No. CIV-21-795-AMG, 2022 WL 4125250, at *3–4 (W.D. Okla. Sept. 9, 2022) ("PTSD Disability Benefits

7

Questionnaire for the VA" was the type of supporting evidence necessary for the ALJ to consider under 20 C.F.R. § 404.1504); *Benally v. Kijakazi*, No. 1:21-CV-00205-KRS, 2022 WL 1303126, at *3–6 (D.N.M. May 2, 2022) (to the extent PTSD disability benefits questionnaire included objective medical evidence and/or medical opinions, "the ALJ could not discount or ignore that evidence simply because it served to support another agency's disability decision"); *Matthew S. v. O'Malley*, No. 5:23-CV-00156-LLK, 2024 WL 2402139, at *2–5 (W.D. Ky. May 23, 2024) (finding ALJ erred in consideration of VA evidence under § 404.1504, as ALJ did not mention the claimant's clinical symptoms underlying the disability rating for PTSD, and favorably citing case reversing for failure to consider PTSD Disability Benefits Questionnaire).

Some cases have additionally found that the sorts of findings made by Dr. Brown <u>also</u> qualify as medical opinions. For example, Dr. Brown's review exam resulted in determinations that Plaintiff had "impairment of short and long term memory," "difficulty in understanding complex commands," "impaired judgment," "impaired abstract thinking," "gross impairment in thought processes or communication," and "difficulty adapting to stressful circumstances, including work." (R. 297.) A "medical opinion is a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions in" various abilities, including the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2)(ii). While these findings came in a section titled "symptoms," it is not clear that they are necessarily limited to the claimant's "own description of [his] physical or mental impairment." *Id.* § 404.1502(i)

8

(defining "symptoms" for purposes of the regulations). *See Benally*, 2022 WL 1303126, at *5 n.5 (citing this list of symptoms, the court found "the VA form completed by Dr. Monteith appears to define 'symptoms' to include a medical source's conclusions and observations regarding limitations associated with an impairment"); *see also Sherman v. Kijakazi*, No. 1:22-CV-00775-RP-SH, 2023 WL 3727022, at *6 (W.D. Tex. Apr. 27, 2023) (finding the PTSD Review and Disability Benefits Questionnaire to be an opinion that the ALJ was obligated to consider under § 404.1520c). If any of this supporting evidence qualifies as a medical opinion, the ALJ was obligated not only to consider it, but also to articulate its persuasiveness. *See* 20 C.F.R. § 404.1520c(a)(1)–(2). The Court need not decide whether Dr. Brown's findings included medical opinions that required such articulation, however, because it finds below that the ALJ did not meet the more minimal requirement of simply <u>considering</u> the evidence.

### C. The ALJ Erred in Failing to Consider the VA's Supporting Evidence.

The Court finds, by the ALJ's own statements, that she explicitly did <u>not</u> substantively consider anything found in Exhibit 14E, including the supporting evidence contained in Dr. Brown's findings. The Commissioner makes the rather spurious argument that the "ALJ explicitly considered" Dr. Brown's findings (ECF No. 14 at 8)—pointing to the ALJ's decision where she states, in total,

> The claimant has provided a VA disability rating (Exhibits 14E and 15E).[4] Current SSA rules state that for claims filed on or after March 27, 2017, we (SSA) will not provide any written analysis in determinations and decisions about how other governmental agencies or nongovernmental entities made

---

[4] In the record, Exhibit 14E contains the letter from the VA regarding Plaintiff's disability rating (R. 291–92), along with the attached questionnaire completed by Dr. Brown (R. 293–98). Meanwhile, Exhibit 15E contains another letter from the VA disclosing that Plaintiff "is entitled to receive service-connected compensation at the 100 percent rate effective March 6, 2021," and that the evaluation is permanent. (R. 300.)

9

> a decision that an individual is disabled, blind, or unemployable in any claim for disability or blindness under titles II or XVI of the Act because those decisions are inherently neither valuable nor persuasive to us (SSA). Current rules state because we (SSA) are responsible for making the determination or decision about whether an individual meets the statutory definition of disability, a statement on an issue reserved to the Commissioner is inherently neither valuable nor persuasive to us. Therefore, for claims filed on or after March 27, 2017, we (SSA) will not provide any analysis about how we considered such statements in our determinations and decisions.

(R. 26.) The only reasonable reading of the ALJ's statement is that she discounted Exhibits 14E and 15E in their entirety, because they were not considerable under § 404.1504 and were "inherently neither valuable nor persuasive" under § 404.1520b(c). There is no basis for the Commissioner's assertion that the ALJ somehow parsed out the "supporting evidence" contained within Exhibit 14E and considered its substance as part of her decision.

The Court further rejects the Commissioner's argument that the ALJ considered the evidence "underlying [Plaintiff's] VA rating" because she generally stated she considered "the entire record" and "the bulk of the evidence the ALJ considered was from the VA." (ECF No. 14 at 8.) First, the Court rejects the assertion that vague statements by the ALJ that she considered "the entire record" necessarily means she actually considered everything in the record as "evidence"; as noted above, this is contradicted by the ALJ's own statements in her assessment. *Cf. Richards v. Colvin*, 640 F. App'x 786, 791 (10th Cir. 2016) (unpublished) ("the ALJ stated that he considered the entire record, and we take the ALJ at his word, <u>unless shown otherwise</u>" (emphasis added)).[5] Second, the Commissioner's arguments are chronologically impossible. The VA letter summarizing

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

Plaintiff's disability status is dated May 24, 2021, and relies on Dr. Brown's April 19, 2021, findings. (R. 291, 298.) The <u>earliest</u> substantive[6] VA medical record is dated May 25, 2021, and states that Plaintiff by then already had "a service connected disability 100% Post-Traumatic Stress Disorder." (R. 371–72.) Third, there is no indication that any of Dr. Brown's records would be found at the VA,[7] and his findings were, additionally, based in part on civilian medical files (R. 295), which are not included in the record. As such, there is no basis on which this Court could find that the ALJ considered <u>any</u> of the supporting evidence underlying the VA's disability decision. The ALJ failed to apply the correct legal standards.

### D. Even if the ALJ Had Considered Dr. Brown's Findings, She Failed to Discuss the Significantly Probative Evidence She Rejected.

When determining whether a claimant is disabled, the ALJ must consider all the evidence in a case record. 20 C.F.R. § 404.1520(a)(3); *see also id.* § 404.1520(e) (RFC decisions based on "all the relevant medical and other evidence"). This is necessary, in part, because at the RFC phase the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

---

[6] The earliest non-substantive VA record is dated April 30, 2021, regarding the scheduling of the May 25th appointment. (R. 382.)

[7] Dr. Brown's address does not appear to match that of a VA facility (R. 298), and the Commissioner provides no basis for finding that his files would be housed at the VA.

When discussing medical evidence, it is improper for an ALJ to "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). The ALJ is under no obligation to "discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But she still has certain articulation requirements. "[I]in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010.

Here, the ALJ found Plaintiff capable of remembering and performing simple and some complex tasks, sustaining attention and concentration for two-hour bursts, and sustaining the associated mental demands throughout an ordinary workday and week, while also finding him capable of limited contact with supervisors and co-workers. (R. 21.) In support of this RFC, the ALJ noted medical records showing normal behavior, denial of hallucinations, no memory impairment, and good concentration. (R. 23–25.) The ALJ further found that "no treating medical source has offered an opinion about the claimant's symptoms and their effects on [his] abilities to perform work activities, leaving the claimant's allegations uncorroborated." (R. 26.) *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017) (an ALJ is to "evaluate an individual's symptoms considering all the evidence in his or her record."). However, Dr. Brown's findings, which the ALJ did not discuss, note difficulty concentrating, memory loss, forgetting to complete tasks, difficulty understanding complex commands, impaired judgment and abstract thinking, difficulty establishing and maintaining effective work relationships, difficulty adapting to work-like settings, impaired impulse control such as unprovoked irritability with periods of violence, persistent delusions or hallucinations, and disorientation to time or place.

(R. 296–97.) The ALJ did not discuss significantly probative evidence she appears to have rejected. And if—despite her statements—the ALJ considered Dr. Brown's evaluation at all, the Court simply cannot follow her reasoning regarding how it factored into the RFC. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (where the court can follow the ALJ's reasoning and can determine that correct legal standards were applied, technical omissions in the ALJ's reasoning do not dictate reversal).

### E.   The ALJ's Error Was Not Harmless.

In the end, the ALJ's articulation failures are beside the point. The ALJ made it clear she did not consider Dr. Brown's findings, because she incorrectly lumped them in with evidence that is not considerable under 20 C.F.R. § 404.1504 and that is "inherently neither valuable nor persuasive" under 20 C.F.R. § 404.1520b(c). Nor were the findings cumulative of other medical evidence in the record that the ALJ did consider and reject. "[T]o the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . ." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (The court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). The Court cannot speculate as to whether the ALJ's determination would have changed had she considered Dr. Brown's findings. It will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). As such, the ALJ's error is not harmless and requires reversal.

## VI.    Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is REVERSED AND REMANDED for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 28th day of February, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT